Indianapolis Southern R. Co. *v.* Emmerson—52 Ind. App. 403.

ment in every material respect. *Republic Iron, etc., Co.* v. *Berkes* (1904), 162 Ind. 517, 526, 70 N. E. 815.

It is also urged that the trial court erred in giving certain instructions and in refusing to give certain other instructions tendered by appellant. Without setting out the instructions given and refused, it is sufficient to say that those refused were covered by others given by the court, and the instructions given, of which complaint is made, have been approved by the Supreme Court in the case of *Vandalia Coal Co.* v. *Yemm, supra.*

Finding no reversible error in the record, the judgment is affirmed.

Note.—Reported in 99 N. E. 643. See, also, under (1) 26 Cyc. 1384; (2) 26 Cyc. 1302; (3) 29 Cyc. 496; (4, 5) 3 Cyc. 348; (6) 38 Cyc. 1711. As to the effect of an irregular, improvident or fraudulent sale by trustee, see 19 Am. St. 293. As to laches, and equity's intolerance of stale claims, see 2 Am. St. 795.

---

# Indianapolis Southern Railroad Company *v.* Emmerson.

[No. 7,581. Filed June 19, 1912. Rehearing denied December 31, 1912. Transfer denied February 13, 1913.]

1. Carriers.—*Passengers.*—*Contract Relation.*—The law implies a contract between passenger and carrier, that the latter shall carry the passenger safely, so far as human foresight, reasonably exercised, can guard against disaster. p. 409.

2. Carriers.—*Duty.*—*Injury to Passengers.*—*Liability.*—A carrier is required to exercise the highest degree of care to secure the safety of passengers, and is responsible for the slightest neglect which is the proximate cause of injury to a passenger who is himself without fault. p. 409.

3. Negligence. — *Acts Constituting Negligence.* — *Operation of Train.*—The sudden or violent motion or jerking of a train may be negligence. p. 410.

4. Carriers.—*Injury to Passengers.*—*Complaint.*—In a passenger's action for injuries caused by being thrown from a train while standing near the door of the car preparatory to alighting, a complaint alleging that after defendant's agents had called the

404     APPELLATE COURT OF INDIANA,

Indianapolis Southern R. Co. *v.* Emmerson—52 Ind. App. 403.

station, and at a time when, according to usage and custom, passengers were making preparation to leave the train at said station, defendant's agents, well knowing such custom and that passengers were preparing to leave the train, and that they were likely to be standing in the aisles, "negligently, unnecessarily and suddenly increased the speed of said train and unnecessarily and negligently jerked said coach," etc., whereby plaintiff was thrown and injured, sufficiently charges negligence so as to withstand a demurrer, in the absence of specific averments that overcome the effect of those constituting such charge.   p. 410.

5. CARRIERS.—*Injury to Passengers.—Presumption of Negligence.— Instructions.—Reference to Complaint.—*An instruction, in a passenger's action for personal injuries from being thrown from a train, that if plaintiff has proved by a fair preponderance of the evidence that she was a passenger on defendant's train, "and that she was jerked or thrown therefrom and injured as charged in her complaint, without any fault on her part," such facts would raise a presumption of negligence on the part of defendant, and that defendant would have the burden of proving that the injury could not have been avoided by the highest practical care and diligence, in order to rebut such presumption, did not tell the jury that proof of the injury alone would create a presumption of negligence, but stated as an express condition that the injury must be shown to have occurred in the manner charged in the complaint, and without fault on plaintiff's part, and therefore was not erroneous.   p. 411.

6. CARRIERS.—*Injury to Passengers.—Presumption of Negligence.— Instructions.—*In a passenger's action for injuries, an instruction that if a carrier provides perfect machinery, cars and roadbed, and the servants in charge of same are negligent, there is a breach of duty, and a presumption of negligence arises in favor of the passenger injured without fault by the negligent operation of the train, the same as it would in case the injury flowed from defective track, cars, or machinery, is not open to the objection that it tells the jury that defendant's negligence will be presumed from the injury regardless of the circumstances under which it was received.   p. 413.

7. CARRIERS.—*Injury to Passengers.—Contributory Negligence.— Children.—Instructions.—*Where, in a passenger's action defended on the ground that plaintiff contributed to her injury by leaving her seat before the train had stopped, there was evidence that plaintiff was sixteen years of age and had comparatively no experience in riding on trains, that the brakeman had twice announced the station, that the train had slowed down, and that plaintiff, believing that it was nearing the station, and with information that it stopped but a few seconds, left her seat and

walked to the door through which the brakeman had passed, when, by a sudden jerk of the train, she was thrown and injured, an instruction that recovery could not be defeated on the ground of contributory negligence, if considering her age and experience and all the surrounding circumstances, plaintiff acted as a reasonably prudent person, similarly situated, would have acted, was proper and applicable to the evidence. p. 413.

8. CARRIERS.—*Injury to Passengers.—Negligence.—Instructions.*—An instruction, in a passenger's action for injuries, that if defendant was guilty of other negligence than that charged, there can be no recovery, was properly refused, since its effect was that, even though defendant was guilty of the negligence charged, and it was the proximate cause of the injury, plaintiff could not recover if the jury found that defendant was also guilty of other negligence. p. 415.

9. TRIAL.—*Instructions.—Refusal.*—An instruction open to criticism on account of being inaccurate, ambiguous, uncertain or misleading, may be properly refused,· even when its giving might not constitute reversible error. p. 415.

10. TRIAL.—*Conflicting Evidence.—Assumption of Facts.—Instructions.—Refusal.*—A requested instruction stating that the evidence shows certain facts, where the evidence as to such facts is conflicting, invades the province of the jury and is properly refused. p. 415.

11. APPEAL.—*Review.—Refusal of Instructions.*—The refusal of instructions, that are covered in their essential features by the instructions given, is not error. p. 416.

12. TRIAL.—*Answers to Interrogatories.—Motion for Judgment.—Grounds.*—The fact that the jury's answers to interrogatories are not consistent with the evidence, or with each other, furnishes no ground for sustaining a motion for judgment thereon. p. 416.

13. APPEAL.—*Review.—Verdict.—Answers to Interrogatories.*—In determining the correctness of the trial court's ruling on a motion for judgment on answers to interrogatories, only the pleadings, the general verdict, and the interrogatories and answers, will be considered. p. 417.

14. APPEAL.—*Review.—Presumptions.—Verdict.—Answers to Interrogatories.*—Every presumption is indulged in favor of the general verdict as against the answers to interrogatories, and it is only when the conflict between them and the general verdict is irreconcilable on any theory, or on any supposable state of facts provable under the issues, that such answers will control. p. 417.

15. APPEAL.—*Review.—Verdict.—Evidence.—Sufficiency.* — Where there is some evidence on each fact essential to its support, a verdict will not be set aside on the ground of insufficient evidence. p. 418.

16. APPEAL.—*Questions Presented for Review.—Motion for New Trial.—Grounds.—Special Verdict.*—No question is raised on appeal by the grounds of a motion for a new trial, that the special verdict is not sustained by sufficient evidence, and is ·contrary to law. p. 419.

17. CARRIERS.—*Injury to Passengers.—Evidence.—Admissibility.— Contributory Negligence.*—In a passenger's action for injuries in being thrown from a train by the sudden jerking of the train while plaintiff was standing near the door preparatory to alighting at a station, evidence in relation to plaintiff's experience in riding on trains, and her information as to the length of time the train stopped at the.station, was admissible as affecting the question of whether she was guilty of negligence contributing to her injury. p. 419.

From Monroe Circuit Court; *James B. Wilson,* Judge.

Action by Maude E. Emmerson, by her next friend, Sarah E. Yockey, against the Indianapolis Southern Railroad Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Duncan & Batman, James E. Kepperley, Robert G. Miller* and *James W. Blair,* for appellant.

*Joseph E. Henley, Rufus H. East* and *Anderson Percifield,* for appellee.

HOTTEL, C. J.—Appellee recovered a judgment in the court below for $5,000 for injuries which she alleged she received by being thrown from one of appellant's trains when a passenger thereon. The cause was tried by a jury which returned a general verdict for appellee in the above amount, with answers to interrogatories.

Appellant's demurrer to the complaint, its motion for judgment on the answers to interrogatories and for a new trial were each overruled, and these rulings present the alleged errors assigned and relied on.

That part of the complaint necessary to present the objection made thereto and other questions presented by the appeal is, in substance, as follows: That when said train was about half a mile east of Trevlac, said defendant, by its agents in charge of said train, sounded the whistle for

said station, and materially checked the speed of said train as it approached a sharp curve then and there in defendant's railroad track at said point; that thereupon said agents aforesaid passed through the train and through the coach in which this plaintiff was riding, and twice announced in a loud tone of voice ''Trevlac''; that at said time said train was passing over said sharp curve, and the speed was greatly reduced as though said train was about to come to a stop; that it was then dark, and the plaintiff, observing lights in houses near the track, believed she was very near said station; that so believing, she arose from her seat, took up her baggage, consisting of a suit case and a hat, walked down the aisle between the seats in said coach to the rear end thereof, in the same direction the servant of said defendant had gone as he announced said station; that plaintiff stopped when near the last seat in said coach, and while so standing in said coach at said point near the rear door of said coach, waiting for said train to come to a full stop at said station, and while in the exercise of due care for her own safety, and without any fault on her own part and without any notice or warning whatever, said defendants, by its agents in charge of said train, carelessly and negligently and with great force and violence so negligently managed and operated said train as to cause the coach in which said plaintiff was riding to be suddenly and violently jerked forward, the speed thereof suddenly and violently increased, causing said coach and train to be instantly drawn forward with a lurch, and thereby this plaintiff, by reason of such negligence, was instantly jerked and thrown from her position out of the rear door of said car, and was suddenly and violently jerked and thrown from said car and off said train while it was thus running at such greatly-increased and high and dangerous rate of speed, causing her to fall and be thrown into a cattle-pit and against some fencing on defendant's right of way, with great force and violence, from which she sustained permanent and lasting

408      APPELLATE COURT OF INDIANA,

Indianapolis Southern R. Co. *v.* Emmerson—52 Ind. App. 403.

injuries; that plaintiff at the time of her injuries was almost wholly without experience in riding on trains, having been a passenger on trains only two or three times in her life, and did not know anything about the management and operation of passenger trains; that as she approached the station of Trevlac on said train, and at the time she left her seat to go to the rear of said car, she was led to believe and did believe the train was very near said station; that she was unacquainted with defendant's track at said point, and said defendant's servant having passed through said coach and having twice called "Trevlac", and having opened the doors of said coach, thereby inviting passengers to leave the train, and knowing that said train stopped at the small stations only a few seconds, she believed that it was necessary for her to get her baggage and go to the rear of the coach to alight from said train; that by custom and usage on defendant's line, passengers desiring to alight at the small stations, such as Trevlac, took up their baggage and made preparations to leave the train as soon as such stations were called, and so believing, plaintiff walked to the rear of said coach, as aforesaid. Plaintiff further avers that said defendant, its agents and servants in charge of said train, well knowing such custom, and that passengers were preparing to leave said train at said station on said date, and knowing that passengers were likely to be standing in the aisles, *negligently, unnecessarily* and *suddenly increased the speed of said train* and *unnecessarily* and *negligently jerked said coach* as aforesaid and thus threw her from said car and said train, injuring her as aforesaid.

The objection urged to the complaint is that (we quote from appellant's brief) "there is no charge of bad track, defective equipment, incompetent servants, or of any mishap to the train, the car, the crew, or the passengers. There is no allegation of a collision, derailment, break, or any accident to the train or to any part thereof, or to a single passenger of the train, or to any one operating it, or to

any one connected with it except appellee. * * * Saying a thing is negligent does not make it so. It requires the statement of some act which is averred to have been improperly done. * * * The fact of the plaintiff's injuries would not raise a presumption of the defendant's negligence.''

Appellant either misconstrues the cases cited and relied on in support of its contention, or fails to give proper force and effect to the averments of the complaint.

''By the sale of a ticket, or the receipt of the price for transportation, from one point to another, a railway company expressly contracts to carry such person to the 1. point covered by the contract, and in addition to that, a contract arises by implication, between the company and the passenger, that the latter shall be carried safely, so far as human foresight, reasonably exercised, can guard against disaster.'' *Kentucky, etc., Bridge Co.* v. *Quinkert* (1891), 2 Ind. App. 244, 247, 28 N. E. 338; 2 Wood, Railway Law 1178. See, also, *Grand Rapids, etc., R. Co.* v. *Ellison* (1889), 117 Ind. 234, 237, 20 N. E. 135; *Prothero* v. *Citizens St. R. Co.* (1893), 134 Ind. 431, 439, 33 N. E. 765; *Knauss* v. *Lake Erie, etc., R. Co.* (1902), 29 Ind. App. 216, 219, 64 N. E. 95. In such cases the carrier is required to exercise the highest degree of care 2. to secure the safety of passengers and is responsible for the slightest neglect which is the proximate cause of injury to a passenger who is himself without fault. *Kentucky, etc., Bridge Co.* v. *Quinkert, supra; Sherlock* v. *Alling* (1873), 44 Ind. 184; *Louisville, etc., R. Co.* v. *Kelly* (1884), 92 Ind. 371, 47 Am. Rep. 149; *Bedford, etc., R. Co.* v. *Rainbolt* (1885), 99 Ind. 551; *Louisville, etc., R. Co.* v. *Thompson* (1886), 107 Ind. 442, 8 N. E. 18, 9 N. E. 357, 57 Am. Rep. 120; *Grand Rapids, etc., R. Co.* v. *Ellison, supra; Louisville, etc., R. Co.* v. *Snyder* (1889), 117 Ind. 435, 20 N. E. 284, 3 L. R. A. 434, 10 Am. St. 60; *Louisville, etc., R. Co.* v. *Lucas* (1889), 119 Ind. 583, 21 N. E. 968, 6

L. R. A. 193; Thompson, Carriers 200-204; *Cincinnati, etc., R. Co.* v. *Worthington* (1903), 30 Ind. App. 663, 666, 65 N. E. 557, 66 N. E. 478, 96 Am. St. 355; *Terre Haute, etc., R. Co.* v. *Buck* (1884), 96 Ind. 346, 49 Am. Rep. 168; *Jeffersonville R. Co.* v. *Hendricks* (1866), 26 Ind. 228; *Cleveland, etc., R. Co.* v. *Hadley* (1908), 170 Ind. 204, 207, 82 N. E. 1025, 84 N. E. 14, 16 L. R. A. (N. S.) 527, 16 Ann. Cas. 1; *Pere Marquette R. Co.* v. *Strange* (1908), 171 Ind. 160, 165, 84 N. E. 819, 85 N. E. 1026, 20 L. R. A. (N. S.) 1041.

The *sudden* or *violent* motion or *jerking* of a train *may be* negligence. *Kentucky, etc., Bridge Co.* v. *Quinkert, supra,* 244, 249; *Louisville, etc., R. Co.* v. *Crunk* (1889), 119 Ind. 542, 21 N. E. 31, 12 Am. St. 443; 2 Wood, Railway Law 1125; *Dougherty* v. *Missouri R. Co.* (1884), 81 Mo. 325, 51 Am. Rep. 239; *Wood* v. *Lake Shore, etc., R. Co.* (1882), 49 Mich. 370; *Cincinnati, etc., R. Co.* v. *Revalee* (1897), 17 Ind. App. 657, 671, 672, 46 N. E. 352; *Consolidated Traction Co.* v. *Thalheimer* (1896), 59 N. J. L. 474, 37 Atl. 132.

The complaint shows that the sudden jerking of the train, alleged to be negligent, was after appellant's agents had called the station for which appellee had purchased her ticket, and at a time when, according to usage and custom, passengers were making preparations to leave the train at said station, and that the agents of appellant, "well knowing such custom and that passengers were preparing to leave said train at said station on said date, and knowing that passengers were likely to be standing in the aisles, *negligently, unnecessarily* and *suddenly* increased the speed of said train and unnecessarily and negligently jerked said coach," etc.

The negligent operation of the train by appellant's servants, the manner of such negligent operation, and appellee's injury, resulting as a consequence, are averred. These general averments of negligence and their causal connection

with the injury are sufficient as against a demurrer, unless
the specific averments overcome their effect. *Pittsburgh,
etc., R. Co.* v. *Richardson* (1907), 40 Ind. App. 503, 82
N. E. 536; *Standard Forgings Co.* v. *Saffel* (1911), 176 Ind.
417, 96 N. E. 321; *Cincinnati, etc., R. Co.* v. *Worthington,
supra*.

The specific acts pleaded, above indicated, tend to support
rather than overthrow the general averment that the train
was negligently jerked, and therefore furnish no ground or
reason for the court to say as a matter of law that such
jerking was not negligent.  The complaint is not open to
the objections made against it.

Appellant objects to instructions Nos. 6 and 7, given at
the request of appellee.  It is insisted, in effect, that by
these instructions the jury was told that the pre-
sumption of the defendant's negligence arises in all
cases of injured passengers, and that the burden was
cast on defendant to prove that the proper degree of care
was exercised by it, regardless of the circumstances under
which the injury was received; in other words, that the trial
court "applied the rule of *res ipsa loquitur* in this case;
while that rule does not apply where the action of the pas-
senger might contribute to the injury."

Instruction No. 6 is as follows: "While the plaintiff here
has the burden of proving the negligence charged, and all
other material facts which constitute the cause of action
alleged in her complaint, yet, if she has proven by a fair
preponderance of the evidence that she was a passenger,
that she had paid her fare and was admitted as a passenger
on defendant's train, and that *she was jerked or thrown
therefrom and injured as charged in her complaint, with-
out any fault on her part,* then I instruct you that *such
facts would raise a presumption of negligence* on the part
of the defendant railroad company, and would place upon
said defendant the burden of proving, in order to rebut the
presumption of negligence, that the injury could not have

been avoided by the exercise of the highest practical care and diligence, and in the absence of such proof on the part of said defendant, such presumption of negligence would prevail.'' (Our italics.)

We do not think the instruction open to the objection urged against it. It will be observed that instruction No. 6 contains, as an express condition necessary to raise the presumption of negligence against appellant, the following provision: ''And that she was jerked or thrown therefrom and injured as charged in her complaint without any fault on her part.'' Under this instruction the jury was not told that proof of the injury alone created a presumption of negligence, but that such injury, in connection with proof that it resulted in the manner charged in the complaint and without appellee's fault, would give rise to such presumption. We think that, under the authorities, the instruction might have told, and was probably intended by its author to tell, the jury, in effect, that proof of the relation of carrier and passenger between appellant and appellee, together with proof of appellant's negligence as charged, and appellee's injury, would create a presumption that the injury resulted from such negligence, and, subject to the condition that appellee was herself without fault, would impose on appellant, in order to avoid liability, the necessity of proving that the injury could not have been avoided by the exercise of the highest practical care and diligence, but the instruction as worded falls far short of being thus favorable to appellee. This instruction, considered in connection with the averments of the complaint, was certainly as favorable to appellant in this regard as the authorities warrant. *Kentucky, etc., Bridge Co.* v. *Quinkert, supra,* 252; *Memphis, etc., Packet Co.* v. *McCool* (1882), 83 Ind. 392, 397, 398, 43 Am. Rep. 71; *Terre Haute, etc., R. Co.* v. *Buck, supra; Louisville, etc., R. Co.* v. *Snyder, supra; Louisville, etc., R. Co.* v. *Thompson, supra; Consolidated Traction Co.* v. *Thalheimer, supra; Cleveland, etc., R. Co.* v. *Hadley,*

*supra,* and authorities cited; *Pere Marquette R. Co.* v. *Strange, supra,* and authorities cited.

So with instruction No. 7, the provision is simply that "if the carrier provides perfect machinery, cars and road bed *and the servants in charge of the same are negligent,* there is a breach of duty, and a presumption of negligence arises in favor of the passenger *injured without his fault by the negligent operation of the train,* the same as it would in case the injury flowed from defective track, cars, or machinery." (Our italics.) This instruction probably does not express what it was intended to express, but it does not tell the jury that appellant's negligence will be presumed from the injury, and, therefore, is not open to the objection urged against it, and certainly could not have harmed appellant.

Instruction No. 8, given at appellee's request, is objected to on the ground that it "undertakes to make experience and age an element in determining the question of contributory negligence." That part of the instruction objected to is as follows: "If you find from a fair preponderance of all the evidence given in the cause that the plaintiff acted as a reasonably prudent person, similarly situated, would have acted *considering her age and experience* and all the surrounding circumstances, then her case cannot be defeated on the ground of contributory negligence alone." It was a part of appellant's defense that appellee by getting up out of her seat and going to or near the door of the car contributed to her injury, and on this account was not entitled to recover. There was evidence showing that appellee at the time she was injured was only sixteen years of age, and had comparatively no experience in riding on trains; that before she left her seat the brakeman passed through the car, twice announcing the station to which she had bought her ticket; that the train had slowed down; that appellee, believing that it was nearing the station, and with information that it stopped but a few

414     APPELLATE COURT OF INDIANA,

Indianapolis Southern R. Co. *v.* Emmerson—52 Ind. App. 403.

seconds, got up preparatory to getting off, and walked to the seat nearest the door through which the brakeman had passed, leaving the same open, when by a sudden increase of speed of the train, she was jerked off her feet, thrown out of the door, and injured as alleged. We think under the evidence the instruction was applicable and supported by authority. *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 658, 70 N. E. 985; *Baltimore, etc., R. Co.* v. *Hickman* (1907), 40 Ind. App. 315, 318, 81 N. E. 1086; *Consolidated Traction Co.* v. *Scott* (1896), 58 N. J. L. 682, 689, 34 Atl. 1094, 33 L. R. A. 122, 55 Am. St. 620; 4 Am. and Eng. Ency. Law 46; *Van Natta* v. *People's St. Railway, etc.* (1896), 133 Mo. 13, 22, 23, 34 S. W. 505; *Pittsburgh, etc., R. Co.* v. *Moore* (1903), 110 Ill. App. 304, 306, 307.

In the case last cited the court said: "It is further claimed that instruction eleven, quoted in the statement, is erroneous because it uses the word 'child' instead of 'person' but we are of opinion that the jury could not have been misled by the instruction for that reason. We think, however, that the instruction is subject to criticism in that it omits the element of the intelligence of the child. The instruction instead of the phrase 'for one of his age and experience' should have been 'for one of his age, capacity and experience.' *R. R. Co.* [Illinois Cent. R. Co.] v. *Slater* [1889], 129 Ill. 91-99 [21 N. E. 575, 6 L. R. A. 418, 16 Am. St. 242]; *City of Chicago* v. *Keefe* [1885], 114 Ill. 222, 229 [2 N. E. 267, 55 Am. Rep. 860]."

In the case of *Consolidated Traction Co.* v. *Scott, supra,* the court said: "And when a child has reached the age of discretion, and is considered *sui juris* as a matter of law, the degree of care and caution required of him will be no higher than such as is usually exercised by persons of similar age, judgment and experience. And whether that degree of care and caution has been exercised by the child in a given case, is usually, if not always, a question of fact

for the jury. 4 Am. and Eng. Ency. Law 46, and cases cited.''

The refusal of appellant's instruction No. 2 is urged as error. This instruction contains a positive statement and direction to the jury that ''if the defendant was 8. guilty of other negligence than that charged, there can be no recovery.'' The effect of this statement was to tell the jury that even though appellant was guilty of the negligence charged, and that the same was the proximate cause of appellee's injury, yet she would not be entitled to recover if it found that appellant was also guilty of other negligence. Taking the instruction as a whole, this court understands that it was doubtless the intent of appellant to have the instruction tell the jury that on the question of appellant's negligence it should not consider any negligence other than that charged in the complaint, and that if appellee's injuries in fact resulted from, and were caused solely by some negligence of appellant other than that charged and relied on in the complaint, there could be no recovery.

But, to say the least, the instruction as tendered was not an accurate statement of the law, and the statement above quoted made it so misleading that it might have been harmful, and therefore furnished sufficient ground for the court's refusal to give it. An instruction open to 9. criticism on account of being inaccurate, ambiguous, uncertain or misleading, may be properly refused when the giving of the same might not constitute such harmful error as to necessitate reversal.

Instruction No. 3, tendered by appellant and refused, is completely covered in all its parts by other instructions.

The refusal to give appellant's instruction No. 6 is urged. This instruction, as preliminary to rules of law announced therein governing appellee's conduct, contained the following: ''The evidence shows the plain-

tiff *voluntarily* left the seat in which she was sitting and, with her baggage, went toward or onto one of the platforms on the defendant's train while it was still in *rapid motion,* and while a *very considerable distance from the station* to which she was going; that there were unoccupied seats in said car, specially provided for passengers; that there was *no necessity* for her leaving her seat at that time and going toward or onto said platform; there is no evidence that others who remained in their seats until said train arrived at Trevlac were injured or hurt, or that other passengers left their seats.''

This instruction clearly invaded the province of the jury. Whether or not appellee *voluntarily* left her seat; whether the train was at such time in ''rapid'' or ''slow motion''; whether it was a *''considerable''* or a short ''distance'' from the station when she left her seat, and whether there was or was not *''necessity''* for her leaving when she did, were, under the conflicting evidence in this case, all questions of fact to be determined by the jury.

The refusal to give other instructions is urged, but we deem it unnecessary to set them out, or refer to them further than to say of them generally that such as correctly stated the law were in their essential features covered by other instructions given at appellee's request stated in language more appropriate to the facts of the case, and less likely to mislead the jury than those refused.

It is next insisted that the court erred in overruling appellant's motion for judgment on the answers to interrogatories. It is insisted that to support its general verdict, ''the jury went to the limit in answering the interrogatories,'' and that the answers are a marvel of inconsistencies and contradictions of each other and of the evidence. These answers, as we view them, while apparently inconsistent in some respects, may be, in the main, when considered together, reconciled with each other and

with the evidence, and are not open to the severe criticism made upon them. But in any event, the fact that all or either of the same are not consistent with the evidence, or with each other, furnished no ground for sustaining a motion for judgment thereon. *McCoy* v. *Kokomo, R. etc., Co.* (1902), 158 Ind. 662, 64 N. E. 92; *Flutter* v. *New York, etc., R. Co.* (1901), 27 Ind. App. 511, 57 N. E. 337; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033.

In determining the correctness of the ruling of the court below on this motion, this court does not look to the evidence, but considers only the pleadings, the general verdict, and the interrogatories and answers thereto. Every presumption is indulged in favor of the general verdict, and it is only when the conflict between such answers and the general verdict is irreconcilable on any theory, or on any supposable state of facts, provable under the issues, that such answers will control. *Consolidated Stone Co.* v. *Summit* (1899), 152 Ind. 297, 53 N. E. 235; *Shoner* v. *Pennsylvania Co.* (1892), 130 Ind. 170, 28 N. E. 616, 29 N. E. 775; *Peru Heating Co.* v. *Lenhart* (1911), 48 Ind. App. 319, 95 N. E. 680; *Southern R. Co.* v. *Utz* (1913), *ante*, 270, 98 N. E. 375.

It is urged that the verdict is contrary to law. In support of this ground of the motion for a new trial it is insisted in effect that the trial court instructed the jury that if the plaintiff was lawfully on the train, there would arise in her favor a presumption that her injury was caused by defendant's negligence and that such presumption could only be removed by defendant's proving by a preponderance of the evidence that "it could not have been avoided by the exercise of the highest possible degree of care."

We have already indicated in the discussion of the instructions that neither of them is open to the criticism so assumed against them, but on the contrary they separately

and in their entirety clearly told the jury that the appellee was required to prove as one of the elements necessary to a recovery, appellant's negligence as charged in her complaint, and expressly recognized the principle that appellee, by getting out of her seat and moving to the rear of the car, and there standing while the same was in motion, thereby assumed all the risks of injury incident to the usual and ordinary operation of the train, and that if by her own act she in any way contributed to the proximate cause of her injury she could not recover.

The insufficiency of the evidence to sustain the verdict is urged, but we think we have already, in this opinion, indicated enough of the evidence to show that there was some evidence on each fact essential to its support.

The evidence in this case is meagre and unsatisfactory as to the actual manner in which appellee's injury occurred, and the real or proximate cause thereof. It was of 15. a character that should, and doubtless did raise in the mind of the trial court, with opportunity to weigh the evidence, serious doubt as to whether appellee's injury occurred, in fact, from any negligent omission or commission of appellant's servants in the operation of said train, rather than from the additional risk which she herself assumed by getting up and walking, with both hands full of packages, to or near the rear door of the coach in which she was riding while said train was in motion, unaffected by any act of appellant other than that of the usual and ordinary operation of its train. This court has no such question to determine.

The only question we are called on to determine is whether there was any evidence on said question, and we cannot say that there was no evidence on this or any other fact necessary to be proven under the issues.

The grounds of the motion for a new trial, that the special verdict is not sustained by sufficient evidence and is contrary to law, raise no question in this court. *Con-*

*solidated Stone Co.* v. *Williams* (1901), 26 Ind. App. 131, 135, 57 N. E. 558, 84 Am. St. 278.

Lastly, it is urged that evidence by appellee in relation to her experience in riding on railroad trains and her information as to the length of time the train stopped at the station of Trevlac was improperly admitted.

While it is true that appellee's experience or lack of experience could have nothing to do with appellant's negligence in the absence of averments showing some special duty arising on account thereof, yet we think under the authorities cited, *supra,* in discussing the instruction tendering the same question, that this evidence was proper as affecting the question of appellee being guilty of negligence contributing to her injury. So we think as affecting the same question, especially in view of the averments of the complaint, that appellee's information as to the length of time the train stopped at the station for which she had purchased her ticket was competent.

We find no error in the record, and the judgment below is therefore affirmed.

NOTE.—Reported in 98 N. E. 895. See, also, under (2) 6 Cyc. 591; (3) 6 Cyc. 624; (4) 6 Cyc. 626; (5, 6) 6 Cyc. 628; (7) 6 Cyc. 637; (9) 38 Cyc. 1598, 1599, 1602; (10) 38 Cyc. 1657; (11) 38 Cyc. 1711; (14) 38 Cyc. 1927; (15) 3 Cyc. 648; (17) 6 Cyc. 628—New Anno. On the question of the liability of a carrier for injuries to passenger inside car from sudden starting or stopping of car or train, see 34 L. R. A. (N. S.) 225. On the presumption of negligence from sudden start, stop, jolt, or jerk of car, see 13 L. R. A. (N. S.) 611.